IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

In re:

**MISSISSIPPI PHOSPHATES CORPORATION,**   Case No. 14-51667-KMS
                                                                         Chapter 11
     **DEBTORS**

_____

**MPC LIQUIDATION TRUST,**
                **Plaintiff**

**VS.**                                                                    ADV. PRO. NO.: 16-06001-KMS

**MISSISSIPPI PHOSPHATES CORPORATION
AND MISSISSIPPI POWER COMPANY**
                **Defendants**

**AND**

**MISSISSIPPI POWER COMPANY**
                **Counter-Plaintiff**

**VS.**

**MPC LIQUIDATION TRUST AND
THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**

                **Counter-Defendants**

                          **AND**

**MISSISSIPPI POWER COMPANY**
                **Cross Plaintiff**

**VS.**

**MISSISSIPPI PHOSPHATES CORPORATION**
                **Cross Defendant**

_____

165005.5

**ANSWER AND DEFENSES OF MISSISSIPPI POWER COMPANY
TO THE COMPLAINT FOR DECLARATORY AND OTHER RELIEF,
COUNTER-CLAIM AND CROSS-CLAIM FOR INTERPLEADER**

Comes now Mississippi Power Company (hereinafter "Mississippi Power") one of the Defendants in the above styled adversary proceeding and files this, its Answer and Defenses to the Complaint for Declaratory and Other Relief, Counter-Claim and Cross-Claim for Interpleader and Declaratory Relief, and in support thereof would say:

**FIRST DEFENSE**

The Complaint fails to state a cause of action against Mississippi Power upon which relief can be granted.

**SECOND DEFENSE**

The refund which is the subject of this action was determined by the Mississippi Public Service Commission acting on its legislative authority[1] pursuant to the Constitution and laws of the State of Mississippi and the Rules of the Mississippi Public Service Commission ("MPSC" or "Commission"). The MPSC has the exclusive original jurisdiction over the intrastate business of public utilities, which includes authority to determine rates and to award refunds due customers.[2] The amount of the refund which is the subject of this proceeding was determined by the Order of the Mississippi Public Service Commission entered on August 6, 2015, to be the "net amount" due to the customer, Mississippi Phosphates Corporation (the "Refund Order"). By default, credits would first be applied to past due amounts.[3] This action is a collateral attack on the aforesaid Order. The MPSC's Order Accepting Refund Plan "accept[ed] the refund method by

---

[1] *Miss. Pub. Serv. Comm'n v. S. Cent. Bell Tel. Co.*, 464 So. 2d 1133, 1135 (Miss. 1984)("It is beyond question that the function of rate making in this state is *purely legislative* in character.")(emphasis added)

[2] Miss. Code Ann. §§ 77-3-5, 77-3-33; *see S. Bell Tel. & Tel. Co. v. Miss. Pub. Serv. Comm.*, 113 So.2d 622 (1959); *Texas Gas Transmission Corp. v. Miss. Pub. Serv. Comm.*, 133 So.2d 526 (Miss. 1961).

[3] P. 4-6, Kemper Refund Plan, Exhibit A hereto.

which customers may choose a lump sum check or take their refund through bill credits." While this Court has authority to determine whether the refund is property of the Debtor's estate, it cannot determine how the refund should be calculated. Funds never refunded by the Commission cannot now be property of Debtor's estate.

## THIRD DEFENSE

Answering the allegations of the Complaint for Declaratory Judgment and other Relief (the "Complaint") paragraph by paragraph, Mississippi Power would say:

### Parties

1.     The allegations of Paragraphs 1 through 3 of the Complaint are admitted

### Jurisdiction and Venue

2.     The allegations of Paragraphs 4 and 5 of the Complaint are denied for the reasons set forth in the Second Defense of this Answer and Defenses. In particular, MPC asserts that the particular relief requested by the Complaint can only be granted by the Commission.

### Background

A.     **The Bankruptcy Case Filing**

3.     The allegations of Paragraphs 6 and 7 of the Complaint are admitted.

B.     **The MS Power Claim and the Refund**

4.     The allegations of Paragraph 8 of the Complaint are admitted.

5.     It is admitted that on June 11, 2015, the Supreme Court of Mississippi handed down a decision in *Mississippi Power Co. v. Mississippi Public Service Commission,* 168 So. 2d 905 (Miss. 2015). However, the remaining allegations of Paragraph 9 of the Complaint are a misinterpretation and misstatement of the decisions and are denied as stated. It is specifically denied that the rate action by Mississippi Power was illegal.

C.    **The Government Settlement and the Asset Purchase Agreement**

6.    It is admitted that the motions referenced in Paragraph 10 of the Complaint and the subparagraphs thereof were filed in this bankruptcy. However, it is denied that the filing of such motions affected the calculation of the refund that the Debtor was entitled to under the Refund Order (the "Kemper Refund") in any way and it is further denied that the filing of such motions had an adverse effect on the rights of Mississippi Power

7.    It is admitted that the orders referenced in Paragraph 11 of the Complaint were entered and filed in this bankruptcy. However, any allegations in or inferences from the allegations of Paragraph 11 that the aforesaid orders affected in any way the Kemper Refund or any of the rights of Mississippi Power are denied.

8.    The allegations of Paragraph 12 of the Complaint are denied insofar as they allege that the sale was free and clear of any rights and interest in the Kemper Refund of Mississippi Power or anyone else.

9.    It is admitted that the motions referenced in Paragraph 13 of the Complaint and the subparagraphs thereof were filed in this action. However, it is denied that the filing of such motions affected the Kemper Refund in any way, and it is further denied that the filing of such motions had an adverse effect on the rights of Mississippi Power

10.    The allegations of Paragraph 14 of the Complaint are denied. The manner and method for calculating the Kemper Refund and any rights to set off, recoupment or any other recovery of any amounts owed to Mississippi Power from the refund were not determined and did not come into existence until August 6, 2015, when Refund Order was entered. As a result, Mississippi Power had no reasonable belief, on or before that date, that it held any such rights, and had no reason or basis upon which to object to the sale or the order approving the same.

The deadline for objections to the sale motion expired two days prior to the entry of the Refund Order, or on August 3, 2015 [Dkt. 945]. Moreover, until August 6, 2015, there was no Kemper Refund and no party had rights to such funds.

11. It is admitted that the order referenced in Paragraph 15 of the Complaint was entered and filed in this action. However, any allegations in or inferences from the allegations of Paragraph 15 of the Complaint that the aforesaid order affected the Kemper Refund or any of the rights of Mississippi Power are denied.

12. It is admitted that the order referenced in Paragraph 16 of the Complaint was entered and filed in this action. However, any allegations in or inferences from the allegations of Paragraph 16 of the Complaint that the aforesaid order affected the Kemper Refund in any way or any of the rights of Mississippi Power are denied.

13. It is admitted that the order referenced in Paragraph 17 of the Complaint was entered and filed in this action. However, any allegations in or inferences from the allegations of Paragraph 17 of the Complaint that the aforesaid order affected the Kemper Refund in any way or any rights of Mississippi Power are denied.

14. It is admitted that the orders referenced in Paragraph 18 of the Complaint were entered and filed in this action. However, any allegations in or inferences from the allegations of Paragraph 18 of the Complaint that the aforesaid orders affected the Kemper Refund in any way or the rights of Mississippi Power are denied.

15. The allegations of Paragraph 19 of the Complaint are denied.

16. It is admitted that the closings transferring substantial assets of the Debtor as set forth in Paragraph 20 of the Complaint occurred on October 16, 2015. The remaining allegations of Paragraph 20 of the Complaint not specifically admitted herein are denied, and it is

specifically denied that those transactions affected the Kemper Refund in any way or the rights of Mississippi Power.

17. It is admitted the provisions of the order quoted in Paragraph 21 of the Complaint are set out in the order. However, it is denied that those terms have adversely affected the Kemper Refund in any way or the rights of Mississippi Power.

## Causes of Action

### Count I – Declaratory Judgment

18. In response to Paragraph 22 of the Complaint, Mississippi Power would adopt and re-allege its responses set forth in Paragraphs 1 through 17 herein.

19. It is admitted that the Plaintiff has alleged that this matter falls under 28 U.S. C. § 2201 and 2202 and Bankruptcy rule 7022. However, the remaining allegations of Paragraphs 23 and 24 of the Complaint, and each subparagraph thereof, are denied as stated.

20. The allegations of Paragraphs 25 through 27 of the Complaint are denied.

### Count II – Turnover

21. In response to Paragraph 28 of the Complaint, Mississippi Power would adopt and re-allege its responses set forth in Paragraphs 1 through 20 herein.

22. The allegations of Paragraphs 29 through 34 of the Complaint are denied.

### Prayer

23. The allegations of the unnumbered paragraph of the Complaint beginning "WHEREFORE" under the heading "Prayer", and each and every subparagraph thereof, are denied and it is denied that the Plaintiff is entitled to any relief whatsoever, except as is hereinafter set forth in the Counterclaim for Interpleader.

**FOURTH DEFENSE**

Alternatively, Mississippi Power would affirmatively show that pursuant to 11 U.S.C. § 553, the common law, and the terms of the order entered by the Mississippi Public Service Commission on August 6, 2015, it is entitled to exercise the right to setoff in the amount of its claim against the Kemper Refund.

**FIFTH DEFENSE**

Alternatively, Mississippi Power would affirmatively show that it is entitled to exercise the right of recoupment, allowing it to recoup the amount of its claim from the Kemper Refund.

**SIXTH DEFENSE**

Alternatively, Mississippi Power would affirmatively show that the only refund to which the Debtor, its successors, or assigns, and the only right which the Debtor had to convey to the Liquidation Trust was the Kemper Refund approved by the Commission in its Refund Order of August 6, 2015. The Refund Order was issued after this Honorable Court's deadline to object to the motion to sell the Debtor's assets free and clear of all liens and encumbrances, which expired on August 3, 2015.

Pursuant to the Refund Order, the refund was calculated based upon the amount shown on the books of Mississippi Power to have been billed to the customer (the Debtor) during the relevant time period, minus any unpaid charges carried on the books of Mississippi Power. Mississippi Power's Kemper Refund Plan were presented and adopted by the Refund Order at a public hearing on August 6, 2015, three (3) days following the objection deadline to the Debtor's motion to sell its assets free and clear. Under the procedural rules of the Mississippi Public Service Commission, any party affected by an order of the Commission may intervene and object to the order. Consequently, the Plaintiff and the Debtor, if they held any rights to the

Kemper Refund on August 6, 2015, had standing to appear and object to Mississippi Power's Refund Plan.[4] By not appearing to object to the Refund Pan, they waived any objection or are now estopped to challenge the method for calculating the Kemper Refund. As a result, they are entitled only to the <u>net</u> amount due after deduction of all unpaid charges on the books of Mississippi Power.

### SEVENTH DEFENSE

Alternatively, Mississippi Power would affirmatively allege that the Order of October 14, 2015 [Dkt. 1050], following the objection deadline of August 3, 2015 [Dkt. 945] and approving the sale or conveyance of certain assets of the Debtor pursuant to 11 U.S.C. §363(f) did not extinguish any of the rights or interests of Mississippi Power in the Kemper Refund. As previously noted, the sole jurisdiction to determine the rates charged by regulated public utilities in Mississippi is vested in the Mississippi Public Service Commission. As such, no customer had an interest in any refund until such time as the Commission held a public hearing and entered an order approving the Refund Plan. On July 7, 2015, the Commission held a public hearing on the Kemper Refund. The Supreme Court remanded to the MPSC to actually decide what would happen to the funds collected from the increased rates. They directed Mississippi Power to file a proposed refund plan with the Commission for its consideration. The Commission did not consider how the refund would be calculated until Mississippi Power submitted its Refund Plan on July 21, 2015. Because no one objected to Mississippi Power's submission and because the Refund Plan allowed adequate protections for all of Mississippi Power's customers, the Refund Plan was adopted by the Commission on August 6, 2015.

---

[4] Rules 6.121 and 15.101 of the Public Utility Rules of Practice and Procedure of the Mississippi Public Service Commission (January 18, 2012).

Through its power over the setting of rates, the Commission had the authority to deny any netting of Mississippi Power. However, it did not do so, and instead found that Mississippi Power's customers were only entitled to the net refund after satisfaction of the outstanding balances on a customer's account. As a result, Mississippi Power had no reasonable basis to assume that it would have any interest to protect by objecting to the Order prior to August 6, 2015.

Now having answered the allegations of the Complaint and having raised its affirmative defenses thereto, Mississippi Power prays that upon a hearing of this cause the Court will enter judgment denying the relief requested by the Plaintiff and will tax all costs against the Plaintiff.

## COUNTERCLAIM AND CROSS-CLAIM FOR INTERPLEADER

COMES NOW Mississippi Power Company ("Mississippi Power"), by and through undersigned counsel of record, Balch & Bingham LLP, and files this its Counterclaim and Cross-Claim for Interpleader against Plaintiff, MPC Liquidation Trust (the "Liquidation Trust"), and the official Unsecured Creditors Committee of Mississippi Phosphates Corporation (the "Committee"), and its Cross-Claim against Mississippi Phosphates Corporation, (the "Debtor"), showing unto this Honorable Court as follows:

### Parties

1. Mississippi Power is a Defendant in the underlying adversary action.

2. The Liquidation Trust is the Plaintiff in the underlying adversary action.

3. Mississippi Phosphates Corporation is the Debtor and a defendant in the underlying adversary proceeding.

4. Notice of the formation of the Committee by the Acting United States Trustee [Dkt. 161] was entered on November 12, 2014. It was assigned, or otherwise conveyed, certain

assets of the Debtor for the purposes of liquidation and distribution to the unsecured creditors in payment of the claims of the unsecured creditors. Upon information and belief, the Committee is making, or intends to make, a claim to the Kemper Refund. The Committee may be served with process by service upon the representative of Trammo, Inc., its Chairman. The Committee is also represented by Derek Meek, Esq., of Burr & Forman LLP, 420 20th St. N, #3400, Birmingham, Alabama 35203, who has agreed to accept service on behalf of the Committee.

### Jurisdiction

5. The Court has jurisdiction over this Counterclaim and Cross-Claim pursuant to 28 U.S.C. §§ 157 and 1334, and Rules 7013 and 7022 of the Rules of Bankruptcy Procedure. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

6. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on October 27, 2014 (the "Petition Date"). At the time of the filing of the Petition, the Debtor operated industrial facilities in Pascagoula, Jackson County, Mississippi, where it manufactured phosphate-based fertilizer.

7. Counter-Plaintiff/Cross-Plaintiff, Mississippi Power, is an investor-owned public utility with its principal place of business in Gulfport, Mississippi. It serves customers in all or part of twenty-three (23) counties in east central and southeast Mississippi, including Jackson County. Much of its business operations, including the rates charged for utility services, are

165005.5

subject to the "exclusive and original jurisdiction" of the Mississippi Public Service Commission ("MPSC" or the "Commission").[5]

8.  For nearly sixty (60) years, the Debtor and/or its predecessors have been customers of Mississippi Power. The rates charged by Mississippi Power for electric utility service provided to Mississippi Phosphates have been, and continue to be, based upon rate schedules filed with and approved by the MPSC.

9.  On or about January 25, 2013, Mississippi Power filed a petition with the MPSC to increase its electric utility rates to recover certain costs associated with the construction of the Kemper County Integrated Gasification Combined Cycle Project (the "Kemper Project"). After a hearing on the Petition, the MPSC issued an order granting Mississippi Power's request for rate relief on March 5, 2013. The result of this order included increased rates for the electric service provided to the Debtor, among others.

10. The MPSC Order was appealed, by other parties to the rate proceedings before the MPSC, to the Supreme Court of Mississippi.

11. On February 12, 2015, the Supreme Court published its decision vacating the rates approved by the MPSC. The Supreme Court further found that the MPSC should restore to all customers the rates in existence prior to the MPSC's March 5, 2013 rate increase, order a refund of all revenue collections under the March 5, 2013 Order, and remanded the case to the MPSC for further proceedings. Mississippi Power and the MPSC each filed a Motion for Rehearing, both of which were denied on June 11, 2015, by a revised opinion which indicated

---

[5] *See* Miss. Code Ann. § 77-3-5.

that an Order should be entered *confestim* refunding the funds to customers. The Supreme Court's Mandate issued on July 2, 2015, and the MPSC addressed the Supreme Court's decision during its July 7, 2015 Open Meeting, wherein it issued an Order on Remand.

12. The Commission's July 7, 2015 Order on Remand directed that Mississippi Power terminate the increased rate collections with the first billing cycle of August 2015, which was on or about July 20, 2015.[6] The MPSC also directed Mississippi Power to file a Refund Plan within fourteen (14) days for the Commission's approval. The MPSC indicated that the Refund Plan should be designed to provide customers the choice of a cash refund within ninety (90) days or a credit to their future bills over a period of time. The MPSC indicated its intent to approve a refund plan consistent with the Supreme Court Mandate during its August 6, 2015 Open Meeting.

13. On July 21, 2015, Mississippi Power presented a Refund Plan with a preferred plan to provide the customer with a choice of receiving a bill credit or payment. The preferred Refund Plan was approved by an order of the MPSC after no objections were made prior to the August 6, 2015 Open Meeting. The approved Refund Plan provided customers with the option to receive a cash refund or a credit to future bills in an amount net of what was owed to Mississippi Power.[7] The details of the Refund Plan are set forth in Exhibit "A" hereto. The Order approving the Refund Plan is attached hereto as Exhibit "B."

---

[6] Although the Supreme Court's Mandate was issued on July 2, 2015, the challenged rates remained in effect until the date set forth in this order because the Supreme Court cannot set rates or order a specific refund. That power rests exclusively with the MPSC.

[7] The Refund Plan, as approved, states : "By default, a bill credit will first be applied to any amounts billed or past due and any remainder would be credited to future monthly billings until exhausted."

**Pre-Petition Refund**

14.     On the Petition Date, the Debtor had five (5) separate accounts with Mississippi Power.  Pursuant to the terms of the Refund Plan as approved by the Order of the MPSC, the gross refund amounts for those five (5) accounts, including interest and sales taxes as of November 9, 2015 were as follows:

| ACCOUNT NUMBER | AMOUNT OF REFUND AS OF 11/09/2015 |
|---|---|
| 19311-65017 | $            88.25 |
| 22539-23010 | $     31,682.65 |
| 22590-55011 | $          112.56 |
| 52495-00011 | $ 1,532,743.92 |
| 60210-75003 | $            72.41 |
| Preliminary Total | $ 1,564,699.79 |

These amounts represent the total based on the Refund Order.

**Right to an Offset or Recoupment under 11 USC §553 and under the Order of the Mississippi Public Service Commission**

15.     On the Petition Date, Mississippi Phosphates owed Mississippi Power One Million Eighty-Two Thousand Five Hundred Sixty-Two and 09/100 Dollars ($1,082,562.09) in unpaid charges for electric utility service delivered to Mississippi Phosphates.  On December 2, 2014, Mississippi Power filed a Proof of Claim for that amount in this proceeding, being Claim Number 35-1.  A copy of the Proof of Claim is attached hereto and incorporated herein as Exhibit "C.".

16.     11 USC §553(a) states:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against

>a claim of such creditor against the debtor that arose before the commencement of the case . . . .

Based upon the language of Section 553(a) and the terms of the Refund Plan as approved by the order of the MPSC, Mississippi Power is entitled to set off the amount of its claim against the refund due to Mississippi Phosphates.

17. The right of a utility company to set off a refund ordered by the MPSC has already been addressed and decided in favor of the utility company by this Court. In *In re Morgan,* 77 B.R. 81, 82-83 (Bkrtcy. S. D. Miss. 1987),[8] this Court held that, under Section 553(a), Mississippi Power could set off a utility rate refund ordered by the MPSC and due to the debtor, even though the setoff was not claimed until after the debtor's discharge. *See also, Michigan Consol. Gas Co. v. Fred Sanders Co.,* 33 B. R. (Bkrtcy. E.D. Mich. 1983) (Natural gas supplier allowed to setoff refund ordered by the Michigan Public Service Commission).

18. The Order of October 14, 2015 [Dkt. 1050] approving the sale or conveyance of certain assets of the Debtor pursuant to 11 U.S.C. §363(f) did not extinguish any of the rights or interests of Mississippi Power in the Kemper Refund. As previously noted, the sole jurisdiction to determine the rates charged by regulated public utilities in Mississippi is vested in the Mississippi Public Service Commission. As such, no customer had an interest in any refund until such time as the Commission held a public hearing and entered an order approving the Refund Plan. On July 7, 2015 the Commission held a public hearing on the Kemper Refund. They directed Mississippi Power to file a proposed refund plan with the Commission for its consideration. The Commission did not consider how the refund would be calculated until Mississippi Power submitted a Refund Plan prior to the August 6, 2015 meeting. That August 6,

---

[8] In *IRS v Luongo,* 259 F.3d 323, 333 (5th Cir. 2001), the United States Court of Appeals for the Fifth Circuit cited *In Re Morgan* with approval in a case wherein the IRS was allowed to set off a tax refund against other taxes owed.

2015 meeting was held after the deadline to object to the motions under which the Plaintiff claims to have received assets free of claims, liens and interests. Through its power over the setting of rates, the Commission had the authority to deny any right of setoff, recoupment, or other credit in favor of Mississippi Power. However, it did not do so. As a result, no party had any rights to any refund until the MPSC issued its order adopting Mississippi Power's Refund Plan on August 6, 2015.

19. Because the amount of the refund for of pre-petition overpayments is greater than the amount of the claim filed by Mississippi Power, they are entitled to a netting of the entire amount of their claim and remit the balance of the refund. After setoff of the amount of their claim, the remaining balance of the refund of pre-petition payments is $482,137.70, which, together with the interest that has accrued since November 9, 2015, is the only pre-petition amount due to the Debtor.

**Post-Petition Refund**

20. On December 2, 2014, this Court entered an Order [Doc 122], pursuant to Section 363, providing for adequate assurance to Mississippi Power for the payment of post-petition utility payments. As a result, the post-petition charges for electric utility service are current, and there is adequate assurance for the payment of the existing charges if not paid.

21. During December of 2014, Mississippi Phosphates ceased the production of phosphate-based fertilizer at its Jackson County facility. Thereafter, electric utility service was continued for loading of ammonia, maintenance of the facilities, and continued operation of the wastewater pumping and treatment system and other environmental safety systems. Prior failures of the environmental systems led to the imposition of civil and criminal penalties by the United States of America and the State of Mississippi.

22.     On July 20, 2015, this Court entered an order [Doc. 950] authorizing the establishment of two separate trusts. One, the Environmental Trust is to be funded by the sale of certain assets and was established to satisfy certain environmental liabilities of Mississippi Phosphates and continue the operation of the environmental system. The other, the Liquidation Trust, is to be funded by the proceeds of the sale of certain other assets and was established to satisfy the claims of creditors. Certain other assets have been conveyed to the Committee, and still other assets were retained by the Debtor.

23.     Charges for electric service from the Petition Date until July 20, 2015, are also subject to the terms of the Refund Plan. Because Mississippi Phosphates has been in compliance with the Adequate Assurance Order, Mississippi Power is not seeking a netting in any amount against the refund arising from post-petition charges. Following the Petition Date, Mississippi Phosphates maintained five (5) post-petition accounts. Pursuant to the terms of the Refund Plan, Mississippi Phosphates is entitled to a refund in the amount of $291,909.25, as evidenced by the following chart:

| ACCOUNT NUMBER | AMOUNT OF REFUND AS OF 11/09/2015 |
|---|---|
| 52495-00020 | $ 279,816.92 |
| 19311-65035 | $ 41.61 |
| 22539-23038 | $ 11,975.46 |
| 22590-55020 | $ 43.55 |
| 60210-75012 | $ 31.71 |
| Preliminary Total | $ 291,909.25 |

**Interpleader and Request for Instructions as to Post-Petition Refund**

24. Inasmuch as there are three (3) separate entities, the Liquidation Trust, the Debtor and the Committee, each of which claim or may claim some or all of the refunds due the Debtor, Mississippi Power is uncertain as to whom it should pay the refunds.

25. Mississippi Power would respectfully request that, pursuant to Rule 7022 of the Federal Rules of Bankruptcy Procedure, the Court allow them to interplead into the registry of the Court $482,137.70, together with interest thereon, and $291,909.25, together with interest thereon, representing the pre-petition refund and the post-petition refund, respectively, and that all parties claiming an interest in the refund be duly noticed to make their claim to the same.

**Relief Requested**

Mississippi Power respectfully requests that the Court enter a judgment declaring its right to setoff, recoup or otherwise deduct all the amounts owed to them by Debtor from the Kemper Refund; that upon payment into the Registry of the Court of $482,137.70, together with interest thereon, as the net refund for pre-petition charges for electric utility service, and $291,909.25, together with interest thereon, as the refund for post-petition charges for electric utility service, the Court will enter an order releasing Mississippi Power from payment of any further sums as part of any refund due to Debtor or the Committee or the Liquidation Trust; and such other relief to which the Court may find them entitled.

Respectfully submitted this 4th day of February, 2016.

                MISSISSIPPI POWER COMPANY

                BY:  BALCH & BINGHAM LLP

                By: /s/ *Paul J. Delcambre, Jr.*
                      Of Counsel

Ben H. Stone (MS Bar No. 7934)
Paul J. Delcambre, Jr. (MS Bar No. 6034)
Matthew W. McDade (MS Bar No. 103207)
BALCH & BINGHAM, LLP
1310 Twenty Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900
Facsimile: (228) 864-8221

*Attorneys for Mississippi Power Company*

## **CERTIFICATE**

I, the undersigned counsel, do hereby certify that I have this day filed the foregoing pleading with the Clerk of Court using the ECF system which sent notification of such filing to counsel listed below:

Robert Alan Byrd, Esq.
rab@byrdwiser.com

Lenard M. Parkins, Esq.
lenard.parkins@haynesboone.com

Karl Burrer, Esq.
Karl.burrer@haynesboone.com

A copy of the foregoing pleading has also been sent by electronic mail to the following:

Stephen W. Rosenblatt, Esq.
steve.rosenblatt@butlersnow.com

Christopher R. Maddux, Esq.
chris.maddux@butlersnow.com

Derek Meek, Esq.
dmeek@burr.com

Marc Solomon, Esq.
msolomon@burr.com

THIS, the 4th day of February, 2016.

    /s/ *Paul J. Delcambre, Jr.*
    Of Counsel