SO ORDERED,

Judge Katharine M. Samson
United States Bankruptcy Judge
Date Signed: January 3, 2017

The Order of the Court is set forth below. The docket reflects the date entered.

___

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE:  MISSISSIPPI PHOSPHATES CORPORATION, *et al* | CASE NO. 14-51667-KMS |
| DEBTORS | CHAPTER 11 |
| MPC LIQUIDATION TRUST | PLAINTIFF |
| V. | ADV. NO. 16-06001-KMS |
| MISSISSIPPI PHOSPHATES CORPORATION and MISSISSIPPI POWER COMPANY | DEFENDANTS |
| AND | |
| MISSISSIPPI POWER COMPANY | COUNTER-PLAINTIFF |
| V. | |
| MPC LIQUIDATION TRUST and THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS | COUNTER-DEFENDANTS |
| AND | |
| MISSISSIPPI POWER COMPANY | CROSS-PLAINTIFF |
| V. | |
| MISSISSIPPI PHOSPHATES CORPORATION | CROSS-DEFENDANT |

1

**ORDER GRANTING AND DENYING MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the Motion for Summary Judgment on the Official Committee of Unsecured Creditors' Counterclaim (Adv. Dkt. No. 28)[1] filed by MPC Liquidation Trust and the Motion for Summary Judgment (Adv. Dkt. No. 34) filed by the Unsecured Creditors' Committee. Having considered the arguments and the record in this case, the Court finds that the motion filed by MPC Liquidation Trust should be granted and the motion filed by the Unsecured Creditors' Committee should be denied.

## I. Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (E), and (O).

## II. Findings of Fact[2]

Mississippi Phosphates Corporation[3] ("MS Phosphates") filed its petition for Chapter 11 bankruptcy on October 27, 2014. Dkt. No. 1. On July 30, 2015, the Court approved the creation of the MPC Liquidation Trust ("the Trust"). Dkt. No. 950 at 5. The "primary purpose" of the Trust is to liquidate and distribute certain assets for the benefit of the bankruptcy estate and the beneficiaries of a separate environmental settlement agreement. Dkt. No. 962-1 at 2. On January 5, 2016, the Trust initiated an adversary proceeding against MS Phosphates and Mississippi Power

---

[1] Unless stated otherwise, citations to the record are as follows: (1) citations to docket entries in the adversary proceeding, Adv. Proc. No. 16-06001-KMS, are cited as "Adv. Dkt. No. ___"; and (2) citations to docket entries in the main bankruptcy case, Case No. 14-51667-KMS, are cited as "Dkt. No. ___".

[2] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

[3] The confirmed plan consolidated bankruptcies filed by several related entities. *See* Dkt. No. 1168 at 21 (defining "Debtors" as "collectively, Mississippi Phosphates Corporation, Ammonia Tank Subsidiary, Inc., and Sulfuric Acid Tanks Subsidiary, Inc." in the plan of reorganization). The Court refers to them collectively by the name of the lead debtor, Mississippi Phosphates Corporation.

Company ("MS Power"), MS Phosphates's public utility creditor. Adv. Dkt. No. 1. MS Power answered and brought counterclaims against the Trust and crossclaims against the Unsecured Creditors' Committee ("the Committee"). Adv. Dkt. No. 9 at 9-17. The four litigants answered the various claims. *See* Adv. Dkt. Nos. 12, 16, 17, 20, 21. Further, the parties stipulated to the relevant facts and admissibility of certain documents for this adversary proceeding. *See* Adv. Dkt. No. 24. The Court summarizes those facts here:

MS Phosphates and MS Power entered into an electric services contract on May 1, 2001, which defined the various rates that MS Phosphates would be charged. Those rates were set and approved by the Mississippi Public Service Commission ("the Commission") in an exercise of its statutory ratemaking authority. *See* Miss. Code Ann. § 77-3-2 (2015). In January of 2013, MS Power sought a rate increase through the Commission to recover costs associated with the construction of the Kemper County Integrated Gasification Combined Cycle Project. The Commission approved the rate increase on March 5, 2013, and the increased rate was in effect for twenty-eight months before the Commission's decision was reversed by the Mississippi Supreme Court. On February 12, 2015, the Mississippi Supreme Court reversed the Commission's decision and ordered a refund. That court decision was withdrawn and superseded by the Mississippi Supreme Court on June 11, 2015, but the holding of the court did not change. *See Miss. Power Co., Inc. v. Miss. Public Serv. Comm'n*, 168 So. 3d 905, 916 (Miss. 2015). On August 6, 2015, the Commission approved MS Power's proposed refund plan. On October 14, 2015, this Court granted a motion for the sale of certain estate property, which motion includes an asset purchase agreement ("the agreement"). Dkt. No. 1050. Relevant to this case, the Trust acquired "all of the assets, properties, titles, rights, and interests of [MS Phosphates], whether real or personal, tangible or

intangible, owned, leased, or licenses" except those specifically excluded. Dkt. No. 1050 at 48. The excluded assets remained property of the estate.

The Trust moved separately for summary judgment on the claims by MS Power (Adv. Dkt. No. 26) and the Committee (Adv. Dkt. No. 28). MS Power moved for summary judgment. Adv. Dkt. No. 32. And the Committee moved for summary judgment. Adv. Dkt. No. 34. These motions are fully briefed and ripe for decision. The crux of what the Court must answer to resolve these motions is twofold: (1) to whom does the refund belong in this bankruptcy and (2) how much is it? For clarity and convenience, the Court answers only the first question in this opinion and leaves resolution of the second to a later decision.

### III. Conclusions of Law

#### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056 (applying Federal Rule of Civil Procedure 56 to adversary proceedings). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party." *Ginsberg 1985 Real Estate P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). The moving party bears the initial responsibility of apprising the court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Once the moving party presents the . . . court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is

inappropriate." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the nonmovant must meet his burden with more than metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A party asserting a fact is "genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment must be rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

B. Ownership of the Refund

The Trust argues it is entitled to the refund because the refund is a general intangible. The Committee argues that the money belongs to it because the money is not a refund at all but actually the proceeds of a constitutional tort.[4] The asset purchase agreement specifically excluded from the sale of assets to the Trust "[a]ny commercial tort claim or interests therein. . . ." Dkt. No. 1050 at 50. So the Court must determine whether the monies that the Mississippi Supreme Court ordered repaid to the overcharged ratepayers were the proceeds of a tort. The Committee has not argued that it is entitled to the money under any other interpretation.

As a preliminary matter, the Court finds that the proceeds of a constitutional tort would be the proceeds of a commercial tort here. Under Mississippi law, any tort where the claimant is an

---

[4] MS Power does not make an argument as to whom the money belongs, but it did assert that it did not commit a constitutional tort. Adv. Dkt. No. 46 at 10-11.

organization meets the definition of a commercial tort. Miss. Code Ann. § 75-9-102(a)(13)(A) (2013). Although MS Phosphates was not a party to the litigation appealing the rate increase to the Mississippi Supreme Court, all ratepayers whose rates increased stood in privity with the appellant, and the Mississippi Supreme Court did not limit its opinion to only the rates paid by the appellant.

### 1. Collateral Estoppel

The Court examines the language of the Mississippi Supreme Court opinion to determine whether it awarded money based on a constitutional tort. Binding a later court with either the findings of fact or conclusions of law of an unrelated court decision requires application of the doctrines of claim preclusion and issue preclusion,[5] also known as res judicata and collateral estoppel. Because the parties do not argue over the facts but rather a question of law, the Court applies issue preclusion. And because the decision was rendered in Mississippi state court, the Court applies Mississippi's doctrine of collateral estoppel. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (holding that a "court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered").

---

[5] The Court notes that the *Rooker-Feldman* doctrine does not apply in this case. The Supreme Court has held that:

> The *Rooker–Feldman* doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005). Neither the Committee nor the Trust are "state-court losers" because they were not involved in the state court litigation. Although they are derivative of MS Phosphates, which the Court finds to be in privity with the plaintiff in the state court action, the plaintiff ostensibly did not "lose" because the rate increase was overturned. Further, neither the Committee nor the Trust seek a rejection of the Mississippi Supreme Court decision; they merely seek application of its findings to this case. The issue before the Court is one of interpretation, not review.

Under Mississippi law, collateral estoppel precludes parties "from relitigating a specific issue which was: actually litigated in the former action; determined by the former action; and, essential to the judgment in the former action." *Am. Cas. Co. v. United S. Bank*, 950 F.2d 250, 253 (5th Cir. 1992) (citing *Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So. 2d 749, 751 (Miss. 1982)). "The requirement that an issue be 'actually litigated' for collateral estoppel purposes simply requires that the issue is raised, contested by the parties, submitted for determination by the court, and determined." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 272 (5th Cir. 2005). "An issue is essential to the judgment if the verdict could not have been rendered without a decision on the issue." Donald Campbell, Jeffrey Jackson & Mary Miller, 2 Encyclopedia of Mississippi Law § 14:21 (2016) (citing *Miss. Emp't Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist. of Neshoba Cnty.*, 437 So. 2d 388, 396 n.8 (Miss. 1983) (quoting *Haring v. Prosise*, 462 U.S. 306, 315 (1983))).

The appeal of the rate increase to the Mississippi Supreme Court raised four issues: (1) whether the rate increase "constitute[d] an unauthorized illegal tax"; (2) whether the statute under which the Commission raised the rate was unconstitutional; (3) whether the rate increase was a "substantive confiscatory taking[] in violation of the Due Process Clause"; and (4) whether a related settlement agreement was invalid. *Miss. Power Co., Inc. v. Miss. Pub. Serv. Comm'n*, 168 So. 3d at 909-10. The first and fourth issues are not relevant to this case. In resolving the second issue, the Mississippi Supreme Court explicitly avoided ruling on the constitutionality of the statute and "examine[d] whether the Commission applied the Act in a statutorily permissible manner." [6] *Id.* at 911. It found that "[t]he Commission ha[d] exhibited a pattern of conduct

---

[6] The Mississippi Supreme Court cannot vacate or set aside an order of the Commission unless it finds that (1) "the order of the commission is not supported by substantial evidence"; (2) the order "is contrary to the manifest weight of the evidence"; (3) the order "is in excess of the statutory authority or jurisdiction of the commission"; or (4) the order

7

throughout these proceedings that exceed[ed] its authority" and that the Commission had "adopt[ed] an entirely new mechanism" of recovery of construction costs not authorized by statute. *Id.* at 912. After finding that the Commission had exceeded its statutory authority and before discussing the constitutional questions, the Mississippi Supreme Court ordered "the Commission . . . to . . . enter an order refunding the monies attributable to the rate increases. . . ." *Id.* The Mississippi Supreme Court then went on to find that *the Commission* had deprived the public of adequate notice of its proceedings in violation of the due process clause and Mississippi statutes. *Id.* at 913-15.

The Court holds that the Mississippi Supreme Court's findings related to constitutional violations were not necessary to its holding that the overpayments be returned to the ratepayers because it had already ordered repayment before undertaking a constitutional analysis. The Mississippi Supreme Court ordered repayment based on its examination of whether the Commission acted in a statutorily impermissible manner. Therefore, the repayment verdict could have been rendered without the constitutional findings, and those findings are not essential to the judgment. Because the constitutional findings are not essential to the judgment, the Court is not estopped from finding that the money ordered repaid is a refund, rather than the proceeds of a constitutional tort.

### 2. *General Intangible*

Having found that the money is, in fact, a refund, the Court next examines whether a refund is a general intangible within the meaning of Mississippi's commercial code. The Trust argues that the refund is a general intangible, which is among the categories of assets it purchased from MS Phosphates in the asset purchase agreement.

---

"violates constitutional rights." Miss. Code Ann. § 77-3-72(4) (1984). The Court finds above that the Mississippi Supreme Court exercised its authority under the third element of Section 77-3-72(4) in ordering the refund.

The Trust cites a New York bankruptcy case for the proposition that a refund of an overpayment is a general intangible. *See In re Iroquois Energy Mgmt., LLC*, 284 B.R. 28, 31-32 (Bankr. W.D.N.Y. 2002). In *Iroquois Energy*, "the debtor paid for the purchase of natural gas from a Canadian supplier. Sometime later, the supplier determined that this payment was excessive, and refunded $31,135 to the debtor." *Id.* at 30. One of the creditors in bankruptcy had perfected a security interest in all of the debtor's general intangibles. *Id.* at 29. The *Iroquois Energy* court, applying the Uniform Commercial Code as adopted by New York, held that the refund was a general intangible:

> The asset presently in dispute is a refund of an over-payment, and not a payment for any goods or services that the debtor may have sold or leased. The refund, therefore, is a general intangible, which [New York commercial law] defines as any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money.

*Id.* at 31 (internal quotation marks omitted). Mississippi law defines general intangible nearly identically to the New York statute relevant in *Iroquois Energy*. A general intangible is "any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction" including "payment intangibles and software." Miss. Code Ann. § 75-9-102(42) (2013).

The Committee argues that refunds under the commercial code must be self-executing, "meaning that the refund is effective without the need of court action[,]" to be general intangibles. Adv. Dkt. No. 48 at 3. The Committee relies on a bankruptcy case from Ohio for this proposition. *See In re Richardson*, 216 B.R. 206, 211-12 (Bankr. S.D. Ohio 1997). The Court, however, does not find *Richardson* to support the supposed self-executing requirement for a refund to be a general intangible. The *Richardson* court recognized that "the obligation of the IRS to a debtor for a tax

9

refund arises as of the end of the relevant tax year and the debtor only has to have satisfied the procedural requirements to secure the tax refund" and further held that the right to such a refund was a general intangible. *Id.* at 211, 219. *Richardson* does not describe the refund as self-executing or hold that in order for a refund to be a general intangible it must be self-executing. But even if *Richardson* can be read to so gloss the definition of a refund, this Court would decline to follow that holding. General intangible is meant to be a catchall category in the commercial code. *See Castle Rock Indus. Bank v. S.O.A.W. Enters., Inc. (In re S.O.A.W. Enters., Inc.)*, 32 B.R. 279, 285 (Bankr. W.D. Tex. 1983). Creating an exclusion from a catchall category that would not fit into any other category in the commercial code would be an absurd result. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

The Court finds that a refund is a general intangible under Mississippi law. This holding accords with the other courts that have considered the question. *See In re E-Z Serve Convenience Stores, Inc.*, 299 B.R. 126, 132 (Bankr. M.D.N.C. 2003) (listing cases) ("Numerous courts have found that a right to a refund . . . is a general intangible.").

## IV. Conclusion

The Court finds that, in overturning the rate increase approved by the Commission and ordering repayment of the overcharged amounts, the Mississippi Supreme held that the Commission had exceeded its statutory authority. The basis of the Mississippi Supreme Court's award of repayment was statutory, not constitutional, despite the language in the opinion discussing violations of due process. Those constitutional findings were not essential to the Mississippi Supreme Court's judgment. And having found that the Mississippi Supreme Court

ordered a refund, the Court also finds that a refund is a general intangible. The refund is the property of the Trust under the asset purchase agreement and not the property of the Committee.

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment on the Official Committee of Unsecured Creditors' Counterclaim (Adv. Dkt. No. 28) filed by MPC Liquidation Trust is GRANTED.

**FURTHER ORDERED** that the Motion for Summary Judgment (Adv. Dkt. No. 34) filed by the Unsecured Creditors' Committee is DENIED.

*## END OF ORDER ##*